UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

**FILED**

SEP 1 6 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

PETRIT DIKO,
PETITIONER,

V.

BOBBY LUMPKIN,
DIRECTOR, TDCJ-CID
RESPONDENT

§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION
4:20-CV-00731-ALM-KPJ

## REPLY TO RESPONDENT'S ANSWER

Comes now Petrit Diko, Petitioner Pro Se, to lodge a timely reply to Respondent's answer, DKT.#39, filed on 08-18-21, persuant to Habeas Rule 5(e) and F.R.A.P. RULE 28.(c) Petitioner recieved the Respondent's answer on 08-23-21. The due date for this reply is 21 days after recieving Respondent's answer (see DKT.#32), which is the 12th day of September, 2021.

Petitioner disagrees with the following in Respondent's answer, and cites the record in support of the facts proffered herein:

(1) On page 8, line 8-9 the Respondent stated: "Both the Court and Mr. Diko agree that the petition is untimely and that statutory tolling does not apply."

Petitioner asserts that the Court reviewed petitioner's objection to Magistrate's Report and Recommendation, Dkt.#25, for denial of Petitioner's petition as barred by the statute of limitations and that this Court ordered that this Report and Recommendation is withdrawn. See Dkt.#32. Also Petitioner asserts that he is at Dkt.#22,page 4-5 has stated that he acknowledges that he is procedurally barred from filing his Federal Application but Petitioner has not stated that the statutory tolling does not apply. Peti-

1

tioner has stated that he has been pursuing his rights diligently and several extraordinary circumstances stood in his way and prevented the timely filing of his §2254 Habeas Corpus. See Dkt.#22, page 4-5.

(2) on page 10, line 2-9 the Respondent stated: "Attorney Udashen was attempting to obtain the previous attorney's case file as well as research the DNA issue that Diko asked him to look into..., Attorney Udashen conveyed these concerns to Diko... Attorney Udashen was working on Diko's behalf up until the point where Diko terminated the relationship... Thus, Diko cannot show extraordinary circumstances such as attorney abandonment or attorney deception."

Petitioner in reply to the above statement of Respondent is showing the facts as following:

(a) After one year and a half that Petitioner hired attorney Gary Udashen to represent him on an application for a Writ of 11.07, Mr. Udashen in his response to the State Bar dated September 14,2018 stated that the reasons for not filing the petitioner's writ of 11.07 was because he had not recieved the petitioner's case file from Trial Counsel. Also he stated that he needed to see these files to perform the DNA testing. (See Dkt.#19,exhibit 15)

Petitioner replied to Mr. Udashen's letter on September 21, 2018. There petitioner outlined to the State Bar everything that took place between Mr. Udashen and him. Petitioner there showed the facts that Mr. Udashen had in fact recieved from Petitioner his casefile from Trial Counsel. Petitioner explained that he has sent to Mr. Udashen his case file in two parts:

2

The first part of the casefile Petitioner sent to Mr. Udashen on <u>March 06,2017.</u> These documents of the casefile was relevant to Petitioner's suggestive claims that may have merit to raise in his 11.07 Writ and all documents that this casefile had about DNA testing. All other documents of the casefile were sent to Mr. Udashen on <u>December 05,2017</u> by Petitioner based on a request from Mr. Udashen dated <u>November 28, 2017.</u>(See Dkt.#19, exhibit 16.) *Also see attached exhibit 1.*

   (b) After Mr. Udashen reviewed the Petitioner's case,which included the trial transcript, Mr. Udashen on <u>June 20, 2017</u> sent a letter to Petitioner which stated: "This is a lab that could do paternity DNA testing for $525.00. Please let me know if <u>you would like to pursue this</u>." I have attatched a copy of this letter as exhibit 2.

   Also Mr. Udashen attatched with this letter a cost estimate from labcorp printed on <u>06/20/17</u>, which shows that the cost of this paternity DNA-test was for $525.00. I have attatched a copy of this labcorp cost estimate as <u>exhibit 3</u>. Petitioner agreed with Mr. Udashen's request and on <u>July 26, 2017</u> sent a check of $525.00 to Mr. Udashen from his inmate trust fund account. I have attatched a copy of the statement of account dated <u>07/31/17</u> as <u>exhibit 4</u>.

   (c) After petitioner paid in full the retainer fee and additional fees to Mr. Udashen and sent him the documents for his appeal, petitioner believed that Mr. Udashen was working on his behalf to get a court order in Denton County District Court to perform this DNA test in order to establish the new evidence. Also, Petitioner believed that if there is any delay from the State Court to get this Court order, Mr. Udashen should have filed a protective petition to the federal court for preserving the statute of limit-

ations. However, Petitioner did not leave things to chance. Pet-
titioner sent eight letters to Mr. Udashen asking him of the sta-
tus of filing the Petitioner's writ of 11.07 and the status in
performing the DNA test. (See Dkt.#17, exhibit 3; Dkt.#18, exhibit
4,5; Dkt.#19 exhibit 7,8,9,10,11) After the third letter from
petitioner, Mr. Udashen gave a response to Petitioner in which he
stated that he still is working on his case (See Dkt.#18, exhibit
6). The letters (4-8) from petitioner never recieved a response
From Mr. Udashen. Petitioner has just one way to communicate with
Mr. Udashen by sending him letters. When Mr. Udashen stopped com-
municating with petitioner, Petitioner then filed a grievance
against Mr. Udashen. Even though a year and a half had passed since
petitioner had hired Mr. Udashen and one year and two months that
petitioner had paid him the cost for the DNA testing, Mr. Udashen
in his response to State Bar dated September 12&14,2018 did not
show that he had made any action in performing the DNA testing, he
has not filed the Petitioner's writ of 11.07 and he did not make
a "protective petition" to the Federal Court for preserving the
Statute of Limitations. So when it became apparent that Mr. Udashen
had not performed the task for which he had been hired to do so,
therein is where Petitioner discharged him (See Dkt.#19, exhibits
14,15,16). The facts that Petitioner mentioned above shows that
petitioner was not only abandoned by attorney Udashen but also
that Mr. Udashen decieved him that he was working on his case.

  (3) On page 10, line 11-16 the Respondent stated:"Ultimately
it was the breakdown in the attorney-client relationship, caused
by Diko when he first insisted on frivolous defense strategies in-
volving DNA testing and then later grieving attorney Udashen to

4

the State Bar once the strategy failed to pan out, that resulted in preventing attorney Udashen from filing a Chapter 64 DNA application or a state Habeas application. (See exhibit 17, ECF No. 19-10 at 2.")

Petitioner in reply to this statement of Respondent is showing the facts as follow:

(a) Petitioner, after signing contract with attorney Udashen, has fulfilled all of his part of this contract by paying the attorney retainer fee in full and on time, also sending him all documents pertaining to his appeal that Petitioner had in his possession and paid additional fees when Mr. Udashen asked him to do so.

(b) Petitioner sent Mr. Udashen his Suggestive Claims that he thought may have merit to be raised in his 11.07 writ, with the purpose that it be reviewed by Mr. Udashen. Petitioner never frivolously insisted or demanded Mr. Udashen to what claims he should raise in his 11.07 Writ including performing a new DNA test. It was Mr. Udashen, who after reviewing Petitioner's case decided that a new DNA test should be performed. Also, Mr. Udashen in response to Petitioner's grievance on September 12, 2018 has stated:"in order to obtain this application for filing, it is necessary to conduct a new DNA test on his case. Mr. Diko's case is dependent on his being able to establish certain facts from DNA testing that were not established from previous application." (See Dkt.#19, exhibit 14)

(c) In above statement the Respondent said that Petitioner has prevented attorney Udashen from filing a chapter 64 DNA application which is in contradiction with Mr. Udashen's statement. Mr. Udashen in his response to the State Bar dated September 14,2018 stated: "our desire for additional testing does not fall under chapter 64

5

(see Dkt.#19, exhibit 15). However, if Mr. Udashen could not have performed this DNA test under chapter 64 and if he did not have any way to do this DNA test, the question remains: "why did he charge the petitioner an additional fee of $525 before one year and two months for the cost of the DNA lab test?"

(d) Petitioner asserts that sending numerous letters to Mr. Udashen and directing him to file his state Habeas Corpus with AEDPA statutory limitation in no way caused a breakdown in an attorney-client relationship as Respondent stated above (See Dkt. # 17,18,19, exhibits 3,4,5, 7,8,9,10,11).

(4) On page 10, line 20 and page 11, line 1-5 the Respondent stated: "furthermore, Diko was aware of the impending federal habeas statute of limitations in August of 2017...Diko was aware of the "protective petition" mechanism of preserving the statute of limitations but instead chose not to do so... Thus, Diko cannot show that he was pursuing his right diligently." Petitioner asserts that he at Dkt.#22 page 7 has stated that he on August 31,2017 has sent a letter to Mr. Udashen reminding him about the statute of limitation period in his post-conviction writ of habeas corpus but petitioner has not stated about "protective petition" that Respondent said above (see Dkt.#22,page7). However petitioner asserts that he could not file at this time a "protective petition" in federal court because he believed that Mr. Udashen would file his 11.07 writ on time by statute of limitations or that he would file a protective petition to the court if it was necessary. Mr. Udashen in his contract with petitioner at page two has written: "factors that may be taken into consideration in determining my fee include..., the time limita-

6

tions imposed by you..." see Dkt.#17,exhibit 1.

   Petitioner asserts that he has exercised reasonable diligence through Mr. Udashen's negligent representation in order to meet the statute of limitations of filing a federal habeas corpus petition. Here, this District Court can percieve that petitioner's diligence after hiring Mr. Udashen is on par with Holland v. Florida,560 U.S. 631,634;130 S.Ct. 2549,2563(2010): Both petitioners wrote their attorneys numerous letters seeking crucial information and providing direction and when their attorneys were unresponsive they both filed grievances with the State Bar association and discharged their attorneys. Moreover unlike Manning,668 F3d. at 117(5th Cir. 2012); and Phillips,216 F3d. at 511;and Arita v. Cain,500 Fed. App'x 352(5th Cir.2012), petitioner Diko unambigously directed Mr. Udashen to file his state habeas corpus within statutory AEDPA limitations, and when Mr. Udashen failed to do so, petitioner discharged Mr. Udashen when it became apparent that he was not going to perform the task for which he had been hired to do. Accordingly, drawing upon decisions in other cases for guidance, Holland 130 S.Ct.2563, this Court can conclude that after hiring Mr. Udashen, petitioner exercised reasonable diligence in pursuing state post conviction relief. The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence. Holland,130 S.Ct. at 2565.

   Petitioner contends that Mr. Udashen's egregious misconduct does constitute an extraordinary circumstance warranting equitable tolling of the AEDPA's statute of limitations in which abandonment by an attorney may suffice to establish an extra-

7

ordinary circumstance potentially warranting equitable tolling. See Maples v. Thomas, 132 S.Ct. 912,913(2012)(commenting that evidence of abandonment would suffice to establish extraordinary circumstances for equitable tolling) Citing Maples, 132 S.CT. at 924.

Therefore Petitioner asserts that this District Court can conclude that the abandonment of Mr. Udashen to file petitioner's state habeas corpus in an adequate time for federal habeas review does constitute extraordinary circumstances beyond Petitioner's control. (See Dkt.#15,16,page 5-22).

Also, other circuits have held that egregious attorney misconduct may constitute extraordinary circumstances, "that justify equitable tolling." See United States v. Martin,408 F3d. 1089,1093(8th Cir. 2005). (Concluding that habeas counsel's affirmative misrepresentation, failure to communicate with habeas client and failure to return client's papers constitute egregious misconduct that may be basis for equitable tolling. See also Flaming v. Evans,481 F3d. 1249 CCA 10(2007) and Spitsyn v. Moore 345 F3d. 796 (2003).

(5) On page 11, line 9-13 the Respondent stated:"...Diko cannot excuse the five months delay in filing his federal habeas petition from the date the CCA denied his state habeas application."

In reply to this statement petitioner is asking this court to review petitioner's memorandum of law Dkt.#15,16, at page 15-21.

(6) On the end of page 11&12,line 1-5 the Respondent stated: "Even after being notified of the denial of his state habeas application, Diko waited until on or about June 29,2020 to request

his case-file from Texas state law library, a delay of two
and a half months.  See exhibit 20, ECF no. 19-13, at 2. Then
Diko waited until September 14,2020 to file his federal habeas
petition, which was a delay of another two & a half months. See
Federal petition at 10."

In reply to Respondent's statement petitioner shows the facts
as follow:

(a) Petitioner asserts that he did not wait two and a half
months until June 29,2020 to request his case-file. Initially
petitioner tried to recieve the documents of his State habeas pro-
ceeding from his appellant attorney Eric Coats. On February 19,
2020 petitioner recieved the white card from the CCA which stated
that on 02/07/20 the application for 11.07 writ of habeas corpus
has been recieved and presented to this court. On February 20,2020
petitioner sent a letter to attorney Coats asking him to send him
a copy of application of 11.07 writ and all documents of appeal
that petitioner had given to him. Petitioner did not recieve an
answer from Mr. Coats. Then on March 18,2020 Petitioner sent a-
nother letter to Mr. Coats with the same request. But again, he
did not recieve a response from Mr. Coats. Then, on July 26,2020
petitioner sent a third letter to Mr. Coats. (See Dkt.#22,page
8 and exhibit 5-7).

(b) The CCA denied petitioner's application on April 15,2020
but as a result of Covid-19 petitioner was notified about it on
April 27,2020 after recieving the white card. On April 28,2020
and May 26,2020 Petitioner sent two letters to the State Bar to
ask them to encourage attorney Eric Coats to send to petitioner

the documents pertaining to his Habeas Corpus application, etc.
Petitioner did not recieve a response from Mr. Coats or the State
Bar concerning this issue. Then on June 23,2020 petitioner filed
a grievance #202003652 against attorney Eric Coats with the State
Bar.

(c) The date of June 29,2020 is not the date that petitioner
requested his case-file of habeas corpus application from the
State law library, it is the date when the state law library re-
cieved the petitioner's request (see Dkt.#19,exhibit 20, and
Dkt.#22, page 19,exhibit 9). Also, the date of June 29,2020 is
not the date that petitioner recieved his case file from the State
Law library, as Respondent stated that petitioner waited from this
date and two and a half months to file his petition. On August
20,2020 petitioner recieved an invoice from the state law library
dated August 5,2020 and on August 28,2020, petitioner following
the policy of TDCJ, was allowed to make out a withdrawal for $30.71
from the inmate trust fund, for purchasing these documents. Due
to Covid-19 the state law library delayed in delivering the doc-
uments in a timely manner. On August 5,2020 and October 20,2020
petitioner recieved from attorney Eric Coats a few documents per-
taining to his application for a writ of 11.07 and trial tran-
script. Mr. Coats did not send to petitioner other necessary
documents that had been asked for by petitioner. On September
14,2020 petitioner filed his §2254 petition, still with no re-
sponse from Mr. Coats.

(7) On page 12,line 17-20 & page 13, line 1-2 the Respondent
stated: "Further contrast Diko's with petitioner's action in
Jimenez v. Butcher. who had requested multiple time extentions

10

from the clerk of the federal district court... Diko did not swift-
ly file his federal habeas petition nor did he request a exten-
tion of time or other similar means."

Petitioner asserts that his case is not similar with the case
of petitioner Jimenez v. Butcher. On April 15,2020 when CCA denied
petitioner's application for a writ of 11.07 petitioner was pro-
cedurally barred since November 22,2017 from filing the federal
application. Also, at this time in the course of the pandemic,pet-
titioner did not know how long he would have to wait in order to
obtain from Mr. Coats or the state law library his case-file of
the state habeas corpus application. Because of this petitioner
didn't know how long the extention of time will need to be to
petition. Moreover at this time petitioner could not file a pro-
tective petiton in federal court.

(8) On page 13,line 9-12 the Respondent stated: "Diko has not
proven the existence of exceptional circumstances or that he acted
with reasonable diligence. Consequently, he is not entitled to
equitable tolling and his federal habeas petition should be dis-
missed with prejudice as untimely."

(a) Petitioner asserts that the facts he listed above show
to this Court that he exercised reasonable diligence in contact-
ing Mr. Coats in order to obtain all of the documents needed for
filing his §2254 petition. When Mr. Coats failed to do so, peti-
tioner took it upon himself to locate documents and purchase them
from the state law library. Comparing the diligence exercised by
petitioner to the diligence exercised by the other petitioner
was faced with comparable instances of the attorney's failure
to return the client's file, transcript, or foward the habeas

11

documents for federal habeas review, Holland,130 S.Ct. at 2563, petitioner asserts that he exercised reasonable diligence throughout Mr. Coats failure in order to file a proper federal petition. In U.S. v. Martin,480 F3d. 1089,1093 (8th Cir.2005) the court concluded habeas counsel's affirmative misrepresentation, failure to communicate with habeas client, and failure to return client's paper constitutes egregious misconduct. See e.g. Spitsy v. Moore,345 F3d. 796,801(9th Cir.2003); and U.S. v. Wynn,292 F3d.226,230(5th Cir.2002). Here in the case at hand, this court can percieve that petitioner's diligence in obtaining the necessary documents for his state habeas proceeding is on par with Martin: Both petitoners contacted their attorneys with numerous letters to obtain crucial documentation and both attorneys were unresponsive, petitioner contacted the state law library to recieve documents he could not recieve from Mr. Coats. Petitioner contends here that due to this circumstance, the act of his habeas counsel was not merely an act of negligence, but rather, egregious misconduct for not fowarding to petitioner all of the documents of his state habeas proceeding. Being a retained attorney, Mr. Coats knew that the entire Habeas proceeding on the state level was and is crucial for federal habeas review. Without such documents, petitioner can [not] meet the AEDPA's review of the State courts' judgment. Petitioner contends that this egregious misconduct does constitute an extraordinary circumstance where the 5th Circuit and other Circuits have held such misconduct by an attorney constitute "extraordinary circumstances."

See Wynn,292 F3d. at 230; Spitsyn,345 F3d. at 801; and Martin, 408 F3d. at 1093. Therefore, petitioner asserts that this court

12

can conclude that petitioner has exercised reasonable diligence
and Mr. Coats egregious misconduct does constitute extraordin-
ary circumstances to warrant equitable tolling for five months
of the AEDPA's statute of limitations.

   (b) Also contributing to the petitioner's extraordinary cir-
cumstances was the situation of Covid-19 virus.  On April 9,2020
the Clements unit went on lockdown due to the spread of the Covid-
19. That lockdown lasted for 64 days. **Petitioners'** only access
to the law library was greatly hindered due to this. Petitioner
was only able to request 3 specific cases per week. In order to
request case research, petitioner has to know [exactly] what case
he wants to review. There was no request in general for instances
such as: (1) cases on AEDPA's standard of review,and (2) cases
for equitable tolling limitation periods. This very limited
access restricted petitioner from finding the necessary federal
law for the AEDPA's review and instances for equitable tolling
in a more timely fashion. Petitioner did not have access to
Lexis Nexus to search for relevant cases. Therefore, petitioner
asserts that this particular circumstance should constitute an
extraordinary circumstance to warrant equitable tolling for
five months.

   The district court decision to dismiss petitioner's habeas
claims raised in the first amended petition as time barred by
the AEDPA statute of limitations without holding an evident-
iary hearing to determine petitioner's equitable tolling claims
valid is a denial of Petitioner's constitutional right: 28 U.S.C.
§2253 (c)(2) for which reasonable jurists could disagree with
the district court resolution.See Slack v. McDaniel,529 U.S. 473

,484(200); Miller-el v. Cockrell 537 U.S. 322,123 S.Ct. 1029(2003)

Fed.R.App.P., Rule 22(b);

### CONCLUSION

Based on the foregoing, the Respondent's answer should be rejected and this court should grant equitable tolling for this Petition for Writ of Habeas Corpus or the case placed on the Courts' calendar for an evidentiary hearing.

AFFIRMATION: I, the undersigned, swear or affirm under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

Respectfully submitted on this ___3rd___ day of _September_, 2021.

_Petrit Diko_
Petrit Diko, Pro Se
John B. Connaly Unit
899 FM 632
Kenedy,Tx-78119

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Reply to Respondent's Answer was mailed From Connally Unit on September 3Rd, 2021 With First Class postage affixed and addressed to:

Edward Larry Marshall

OFFICE OF the Attorney General - Administrative Law Division

P.O. Box 12548, Capitol Station

Austin, TX 78711


_Petrit Diko_

PETRIT DIKO, PRO SE,

15